UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN THOMAS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TELIX PHARMACEUTICALS LTD., CHRISTIAN P. BEHRENBRUCH, DARREN SMITH, and KYAHN WILLIAMSON,<br><br>Defendants. | Case No: 1:25-cv-02299<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff John Thomas ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Telix Pharmaceuticals Ltd. ("Telix" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.[1]

---

[1] Unless otherwise stated, all emphasis is added.

1

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Telix securities between February 21, 2025 and August 28, 2025, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Telix securities during the Class Period and was economically damaged thereby.

7. Defendant Telix has stated the following about its business:

Telix is a biopharmaceutical company focused on the development and commercialization of therapeutic and diagnostic radiopharmaceuticals and associated medical technologies.

8. Defendant Telix is incorporated in Australia and its U.S. headquarters are in Indianapolis.

9. Telix American Depositary Shares ("ADS" or "ADSs" trade on the Nasdaq Global Select Market (the "NASDAQ") under the ticker symbol "TLX".

10. Defendant Christian P. Behrenbruch ("Behrenbruch") served as the Company's Chief Executive Officer ("CEO") at all relevant times. He co-founded Telix and is its executive director.

11. Defendant Darren Smith ("Smith") has served as the Company's Chief Financial Officer at all relevant times.

12. Defendant Kyahn Williamson ("Williamson") served as the Company's Senior Vice President for Investor Relations and Corporate Communications at all relevant times.

13. Defendants Behrenbruch, Smith, and Williamson are collectively referred to herein as the "Individual Defendants."

14. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

3

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

15. Telix is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Telix under *respondeat superior* and agency principles.

17. Defendant Telix and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

18. On February 20, 2025, after market close, Telix held its earnings call for the 2024 fiscal year (the "2024 Call").

19. Defendant Williamson made the following statement on the 2024 Call:

We are delivering against all aspects of our growth strategy and some of these operational highlights include the continued strong commercial performance driven by sales of Illuccix and the creation of a platform for further growth as we prepare to launch three

4

new products in the U.S. next year and roll out Illuccix globally into Europe and UK specifically.

***We're making great progress across our therapeutic pipeline**, **notably in the*** late-stage assets being brain, kidney and, of course, ***our prostate cancer program which is now in Phase 3***. ***And we've had some really exciting developments across the next generation pipeline including delivery of a clinical proof-of-concept for our prostate cancer alpha candidate***. It's been a year of many acquisitions and these are supporting the strategic expansion of our pipeline and the build out of our global product delivery or manufacturing infrastructure. So in short, the business looks very different to what it did a year ago and at the end of 2025 it will look very different again as a result of this great progress.

20. Upon information and belief, the statement in ¶ 19 was materially false and misleading at the time it was made, given that the SEC later subpoenaed Telix for representations made about the development of its prostate cancer therapeutics.

21. Defendant Behrenbruch made the following statement on the 2024 Call:

To deliver these products globally, you need to have infrastructure to really be able to go that last mile and make the product available with a high degree of confidence for patients.

We've been focusing on building that infrastructure, scaling it to meet the demand both today and the expected demand for our products. And this is really a two-part model for success. ***We are heavily dependent on key partnerships***. Our goal is not to go at the task of manufacturing alone. ***And in almost every market we operate in, we have key supply chain, manufacturing, distribution and even sales and marketing partnerships***. But we also have a certain amount of facilitative infrastructure ourselves.

22. The statement in ¶ 21 was materially false and misleading at the time it was made because it omitted that certain of Telix's partners had material issues that caused the FDA to identify deficiencies in a response letter to a Biologics License Application.

23. On February 24, 2025, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2024 (the "2024 Annual Report"). Attached to the 2024 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Behrenbruch and Smith attesting to the accuracy of financial reporting, the

5

disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

24. The 2024 Annual Report included the following risk disclosure:

***We are currently dependent on third parties for the manufacture, distribution and patient dose preparation of our products and product candidates and any difficulties, disruptions, delays or unexpected costs, or the need to find alternative sources, could adversely affect our results of operations, profitability and future business prospects.***

While we have acquired some laboratory capability with Optimal Tracers in Sacramento, IsoTherapeutics in Angleton, and the facility purchased from ImaginAb, Inc. in Los Angeles, and completed Stage 1 of the buildout of our European manufacturing site in Brussels South, which is operational for selected research and development activities, we currently rely, and expect to continue to rely, on third-party contract manufacturers to manufacture our products and product candidates for our commercial and clinical use.

***Facilities used by our third-party manufacturers may be inspected by the FDA or applicable foreign regulatory authorities after we submit a marketing application and before potential approval of the product candidate and are also subject to ongoing periodic unannounced inspections by the FDA or applicable foreign regulatory authorities for compliance with cGMPs (or similar foreign requirements) and other regulatory requirements following approval. Similar regulations apply to manufacturers of our product candidates for use or sale in foreign countries***. We do not control the manufacturing processes of, and are completely dependent on, our third-party manufacturers for compliance with the applicable regulatory requirements for the manufacture of our products and product candidates. Third-party manufacturers may not be able to comply with cGMPs or similar regulatory requirements outside of the United States. ***If our manufacturers cannot successfully manufacture material that conforms to our specifications and the strict regulatory requirements of the FDA and any applicable foreign regulatory authority, they will not be able to secure and/or maintain regulatory approval for their manufacturing facilities***. If these facilities are not approved for commercial manufacture or are not able to maintain approval, we may need to find alternative manufacturing facilities, which could significantly impact our ability to develop, obtain regulatory approval for or market our products or product candidates as alternative qualified manufacturing facilities may not be available on a timely or cost-efficient basis, or at all. Failure by any of our manufacturers to comply with applicable cGMPs (and similar foreign requirements) or other regulatory requirements could result in sanctions being imposed on us or the contract manufacturer, including fines, injunctions, civil penalties, delays, suspensions or withdrawals of approvals, operating restrictions, interruptions in supply and criminal prosecutions, any of which could significantly and adversely affect supplies of our products or product candidates and have a material adverse impact on our business, financial condition and results of operations.

> We currently have long-term supply agreements with our third-party contract manufacturers to manufacture the clinical and commercial supplies of Illuccix and for our product candidates. Our ability to have our products manufactured in sufficient quantities and at acceptable costs to meet our commercial demand and clinical development needs is dependent on the uninterrupted and efficient operation of our third-party contract manufacturers' facilities. Reliance on third-party manufacturers entails risks, including:
>
> - reliance on the third party for regulatory compliance and quality assurance;
>
>   *    *    *
>
> - equipment malfunctions, power outages or other general disruptions experienced by our third-party manufacturers or distributors to their respective operations and other general problems with a multi-step manufacturing or distribution process;
> - the possible disruptions to supply chain and logistics processes that are required to store, transport, and deliver our products to customers that require timely delivery given the need to inject a dose of our products within a specific window of radioactivity; and
>
>   *    *    *
>
> We currently rely on a single source supplier for our active pharmaceutical ingredient for Illuccix and our related product manufacturing requirements, although additional sources and back-up suppliers are being validated and implemented. Any performance failure on the part of our existing or future manufacturers could delay clinical development, regulatory approval or commercialization of our product candidates. If our suppliers or contract manufacturers are so affected, our supply chain could be disrupted, our product shipments could be delayed, our costs could be increased and our business could be adversely affected. If our current contract manufacturers cannot perform as agreed, we may be required to replace those manufacturers. Although we believe that there are several potential alternative manufacturers who could manufacture Illuccix or our product candidates, we could incur added costs and delays in identifying and qualifying any such replacement. Consequently, we may not be able to reach agreement with third-party manufacturers on satisfactory terms, which could negatively impact revenues from sales of Illuccix or delay commercialization of any product candidates that are subsequently approved.

25.     The statement in ¶ 24 was materially false at the time it was made because it materially understated the risk of dependency on third parties, considering that, in responding to the Biologics License Application for TLX250-CDx, the FDA identified deficiencies in the manufacturing process for TLX250-CDx as a result of issues at third party manufacturing sites, which Defendants knew of or should have known of.

7

26. The 2024 Annual Report included the following risk disclosure:

***Our business is substantially dependent on the commercial success of Illuccix and our product candidates. If we are unable to successfully commercialize Illuccix as currently approved or to successfully obtain regulatory approvals to commercialize our other product candidates, our business, financial condition and results of operations will be materially harmed.***

\*   \*   \*

***In May 2024, we completed our submission of a biologics license application, or BLA, to the FDA for TLX250-CDx for the characterization of renal masses as clear cell renal cell carcinoma, or ccRCC. In July 2024, the FDA declined to review the BLA and issued a Refuse to File, or RTF, determination***. An RTF determination is a response from the FDA following its preliminary review, communicating the FDA's determination that the application does not include all pertinent information and data. The denial of acceptance for filing ***was based on a filing concern related to demonstrating adequate sterility assurance during dispensing of TLX250-CDx in the radiopharmacy production environment***. While ***we believe that TLX250-CDx has met all sterility requirements of product release and have resubmitted the BLA***, there can be no assurance that FDA will accept the BLA for review or that we will obtain regulatory approval from the FDA.

27. The statement in ¶ 26 was materially false at the time it was made because it materially understated the continued risks involved in the TLX250-CDx biologics license application considering that Defendants knew of or should have known of continued deficiencies in the manufacturing process.

28. On August 20, 2025, Telix conducted its earnings call for the first half of 2025 (the "1H Call").

29. Defendant Smith made the following statement on the 1H Call:

We continue to ***invest strategically into our manufacturing and supply chain infrastructure to preserve our competitive edge*** and to ensure we are in a position to scale efficiently as demand grows.

30. Defendant Behrenbruch made the following statement on the 1H Call:

***Turning to manufacturing and supply chain excellence***. I want to emphasize that radiopharmaceutical manufacturing and distribution is an extremely complex business from an operational quality and regulatory perspective. ***A robust, reliable supply chain is***

> *critical to long-term success, especially for a multiproduct portfolio like ours that's also going to one day deliver therapeutic outcomes.*
>
> This is why we've made strategic investments in selective aspects of vertical integration over the past couple of years, *alongside deepening relationships with key strategic partners that we think are best aligned with our long-term commercial strategy*.

31.     The statements in ¶¶ 29-30 were materially false and misleading at the time they were made because they materially overstated the quality of the company's supply chain. In reality, certain of Telix's partners had material issues that caused the FDA to identify deficiencies in a response letter to a Biologics License Application.

32.     The statements contained in ¶¶ 19, 21, 24, 26 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1); Defendants materially overstated the progress Telix had made with regard to prostate cancer therapeutic candidates; (2) Defendants materially overstated the quality of Telix's supply chain and partners; and (3) as a result, Defendants' statements about Telix's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

33.     On July 22, 2025, before the market opened, Telix filed with the SEC a current report on Form 6-K. Attached to the current report was a press release. In pertinent part, it stated the following:

> Telix has received a subpoena from the [SEC] seeking various documents and information primarily relating to the Company's disclosures *regarding the development of the Company's prostate cancer therapeutic candidates*.
>
> The Company is fully cooperating with the SEC and is in the process of responding to the

9

information request. At this stage, this matter is a fact-finding request. The Company has elected to notify the Australian Securities and Investments Commission of the SEC's information request. Telix's policy is not to discuss any details of an ongoing regulatory inquiry.

\*   \*   \*

While the matter is ongoing, Telix will continue with its clinical development programs relating to its prostate cancer therapy candidates, in the ordinary course of business. The information requested does not extend to Telix's commercial and late-stage precision medicine products including Illuccix, Gozellix, Zircaix, Pixclara and Scintimun[.]

34. On July 22, 2025, after market close, Bloomberg published an article entitled "Telix Shares Drop as SEC Probes Disclosures Tied to Prostate Cancer Drug Pipeline." This article stated that "[Telix] slumped as much as 16%, the most in 21 months, after the Australian developer of radioactive drugs said it received a subpoena from the [SEC] seeking information about disclosures related to its prostate cancer therapeutic candidates."

35. On this news, Telix ADSs fell $1.70 per ADS, or 10.4%, to close at $14.58 on July 23, 2025. The next day, Telix ADSs fell a further $0.69 per ADS, or 4.7%, to close at $13.89 on July 24, 2025.

36. On August 28, 2025, Telix posted an announcement on its website entitled "Telix Provides Regulatory Update on TLX250-CDx." It stated the following:

> Telix Pharmaceuticals Limited (ASX: TLX, NASDAQ: TLX, "Telix") today announces that it has received a Complete Response Letter (CRL) from the United States (U.S.) Food and Drug Administration (FDA) for the Biologics License Application (BLA) for ***TLX250-CDx (Zircaix®1 , 89Zr-DFO-girentuximab),*** an investigational PET2 agent for the diagnosis and characterization of renal masses as clear cell renal cell carcinoma (ccRCC).
>
> ***The CRL identifies deficiencies relating to the Chemistry, Manufacturing, and Controls (CMC) package.*** The FDA has ***requested additional data to establish comparability between the drug product used in the ZIRCON Phase 3 clinical trial and the scaled-up manufacturing process intended for commercial use***. Additionally, the FDA has documented notices of deficiency (Form 483) ***issued to two third-party manufacturing and supply chain partners that will require remediation prior to resubmission***.

10

37. On this news, the price of Telix ADSs fell $1.95 per ADS, or 16.1%, to close at $10.15 on August 28, 2025. The next day, Telix ADSs fell a further $0.60 per ADS, or 5.9%, to close at $9.55 on August 29, 2025.

38. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Telix securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Telix, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Telix securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Telix;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Telix to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Telix securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Telix shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, Telix filed periodic public reports;

- Telix regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Telix' securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Telix was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

46. Based on the foregoing, the market for Telix securities promptly digested current information regarding Telix from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Telix securities during the Class Period.

52. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Telix were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Telix, their control over, and/or receipt and/or modification of Telix' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Telix, participated in the fraudulent scheme alleged herein.

53. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Telix personnel to members of the investing public, including Plaintiff and the Class.

54. As a result of the foregoing, the market price of Telix securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Telix securities during the Class Period in purchasing Telix securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

55. Had Plaintiff and the other members of the Class been aware that the market price of Telix securities had been artificially and falsely inflated by Defendants' misleading statements

and by the material adverse information which Defendants did not disclose, they would not have purchased Telix securities at the artificially inflated prices that they did, or at all.

57. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Telix securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of Telix, and conducted and participated, directly and indirectly, in the conduct of Telix' business affairs. Because of their senior positions, they knew the adverse non-public information about Telix's business practices.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Telix' financial condition and results of operations, and to correct promptly any public statements issued by Telix which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Telix disseminated in the marketplace during the Class Period concerning Telix' results of operations. Throughout the Class Period, the Individual Defendants

exercised their power and authority to cause Telix to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Telix within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Telix securities.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Telix.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 10, 2025               **WILLIAMS LAW GROUP, LLC**

                                       /s/ *Brad A. Catlin*
                                       Brad A. Catlin
                                       1101 N. Delaware Street
                                       Indianapolis, Indiana 46202

Phone: (317) 633-5270
Email: brad@williamsgroup.law

*Liaison Counsel for Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*